# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TISHE MALLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 3296 |
| | ) | |
| BOARD OF EDUCATION, CITY OF CHICAGO, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Tishe Mallett ("Mallett") sued her former employer, the Board of Education for the City of Chicago (the "Board"), under the Age Discrimination in Employment Act (the "ADEA"). She alleges that the Board violated the ADEA when it discharged her and thereafter failed to rehire her for a newly-created, but lower paying, position that entailed many of her usual job duties. The Board moves for summary judgment contending that Mallett cannot establish a *prima facie* claim of age discrimination, and, alternatively, that Mallett cannot demonstrate that the Board's proffered non-discriminatory reasons for termination are pretextual. For the reasons below, the Court grants the Board's motion in part, and denies it in part.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255. "[N]either the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts will defeat a motion for summary judgment." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000) (ADEA context) (internal quotation and citation omitted).

The party seeking summary judgment must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To prevail, the responding party must then come forward with facts "sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Id.* at 322. "Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only *if appropriate* – that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (internal quotation omitted) (emphasis original). "Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Id.* (internal citation omitted).

## BACKGROUND

**I.      Mallett's Employment with the Board**

Mallett, born March 9, 1943, worked for the Board from 1978 until August 5, 2003. (R. 23-1; Def.'s Stmt. of Material Facts ("SMF") at ¶ 2, 8.) For the first 21 years of her tenure, Mallett worked as a clerk in the Board's Government Funded Programs unit, which, by the time of Mallett's discharge, Defendant had renamed the Parent Resource Services Center (the "PRSC"). (*Id.* at ¶ 13.) The PRSC, a federally funded program, provides resources, training, and education to parents of students in low-income areas and low achieving schools. (*Id.* at ¶ 7.) In addition to Mallett, the PRSC had three employees on its staff: Alice Hill-Richards (now forty four years old), Betty Willis (now fifty nine years old), and Lillian Sanders (now sixty five years old), Mallett's immediate supervisor. (*Id.* at ¶¶ 4, 9-12.) Eva Nickolich (now sixty six years old), the Board's Deputy Chief Education Officer, directly supervised Sanders. (*Id.* at ¶ 6.)

As a clerk, Mallett's job duties included keeping attendance records, requesting and dispensing car fare, processing vendor payments, maintaining membership rosters, and taking meeting minutes. (*Id.* at ¶ 13.) In 1999, Mallett's job title changed to Statistician Trainee. (*Id.*) Under this new title, Mallett's duties and responsibilities were much the same as those she had as a clerk, but in addition, Mallett was charged with submitting payroll, preparing requisitions for materials, preparing time sheets, ordering supplies, processing invoices, and answering telephones. (*Id.*; R. 29-1; Pl.'s Stmt. Add. Material Facts ("SAMF") at ¶ 24.) Despite attending to some of her new responsibilities, Mallett did not perform all of the duties listed in the

3

Statistician Trainee job description.[1]  (R. 23-1; Def.'s SMF at ¶ 16.)  Sanders testified, however, that the PRSC staff, including Mallett, did whatever necessary to help the office run smoothly.  (R. 29-1; Pl.'s SAMF at ¶ 25.)

## II.     The Circumstances Surrounding Mallett's Discharge

In preparing the 2003-2004 budget and complying with the newly enacted "No Child Left Behind" Act, the Board reallocated certain portions of the PRSC's budget directly to schools.  (R. 23-1; Def.'s SMF at ¶ 14.)  In that same year, the Board also faced a district-wide mandate to cut its budget by 15%.  (*Id.* at ¶ 15.)  As a result, the PRSC was forced to cut costs.  (*Id.* at ¶ 16.)  To this end, Nickolich decided to eliminate the position of Statistician Trainee (the highest salary of the three positions Sanders supervised), replacing it with the new, lower paying position of Administrative Assistant I ("AAI").  (*Id.* at ¶¶ 16, 17.)[2]

In the formal request to the Board to open the AAI position, Nickolich confirmed that the "new position reflects what the person will be doing and is at a lesser salary.  Old position (current) does not reflect actual duties/responsibilities."  (R. 29-1; Pl.'s SAMF at ¶ 29, Ex. E.)  The AAI "position description" more fully states that the "successful applicant . . . must perform the following duties":

---

[1]       The record submitted by the parties does not contain the actual Statistician Trainee job description, but merely refers to Sanders's sworn testimony stating that Mallett was not performing all the required duties.  (R. 23-1; Def.'s SMF at ¶ 16.)  Mallett does not dispute this issue.  (R. 26-1; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6 ("Mallett [ ] does not dispute that she was performing the duties of an administrative assistant instead of Statistician Trainee.").)  In addition, the Board, by remaining silent in its briefing, appears to concede that it never asked Mallett to fulfill all of the duties in the Statistician Trainee job description.

[2]       The Board also eliminated Hill-Richard's position of parent advocate.  (*Id.* at ¶ 19.)

4

- Under supervision, performs responsible duties involving the gathering, editing, and reporting of data for Parent Advisory Council's information

- Responsible for most pleasantly and efficiently handling a heavy volume of incoming calls to the parent center

- Preparing Parent Advisory council minutes and responsible for disbursement of car fare to parents

- Monitor and maintain records to ensure timeliness and accuracy ensuring that consultants, vendors, and staff are paid through the Parent Resource Center

- Enter and track purchase orders, requisitions, and payouts for staff, vendors and consultants

- Maintains timesheets and prepares payroll.

(*Id.* at ¶ 39.) Mallett met the qualifications listed in the AAI position description. (*Id.* at ¶ 52.) Accordingly, Nickolich told Sanders, who was to make the final hiring decision, that Mallett could apply for the new position. (*Id.* at ¶ 32.) As a matter of policy, the Board would have given preference to Mallett if she had applied for the position, unless another candidate was more qualified. (*Id.* at ¶ 41.)

On June 20, 2003, Sanders told Mallett that, due to budget constraints, the Board had eliminated her Statistician Trainee position, replacing it with the newly-created AAI position.[3] (*Id.* at ¶ 44.) Later that same day, Sanders told Mallett that she would be discharged effective at the end of the month. (*Id.* at ¶ 45.) Although it was her responsibility to do so, Sanders neither asked Mallett if she had an interest in the AAI position nor informed Mallett that she could

---

[3] At some point, Nickolich also spoke directly to Mallett and explained to her that the Statistician Trainee position was being redefined. (*Id.* at ¶¶ 32, 36.) During this conversation, Mallett orally requested that Nickolich hire her for the new position, but Nickolich informed Mallett that Sanders had the last say in determining who to hire. (*Id.* at ¶ 36.)

apply. (*Id.* at ¶ 34.) Even so, Mallett told Sanders several times that she wanted to be transferred to the AAI position. (*Id.* at ¶ 42.) Mallett, however, did not submit a formal application because each time she had asked Sanders about the opening, Sanders told Mallett that she would not give Mallett the position. (*Id.* at ¶ 43.) Sanders admits, however, that she could have changed the job title to allow Mallett to keep her position without requiring Mallett to reapply or compete with other candidates. (*Id.* at ¶ 28.)

Some time after June 20, Mallett called the Board's Human Resources Department (the "HR Department") to confirm that June 30 was, in fact, her last day. (*Id.* at ¶ 47.) The HR Department told Mallett to continue reporting to work until she received a letter stating otherwise. (*Id.*) Mallett continued reporting to work after June 30, but eventually received a letter stating that July 22, 2003 would be her last day of work. (*Id.*)

On July 21, 2003, Sanders authored a "Personnel Bulletin Advertisement Request Form" to advertise the AAI vacancy in the Chicago Public Schools Personnel Bulletin. (*Id.* at ¶ 49.) After receiving her layoff letter, Mallett asked the HR Department on a weekly basis about the availability of the AAI position, or any other position. (*Id.* at ¶ 50.) The HR Department always told Mallett that the Board did not have any open positions. (*Id.*)

On August 31, 2003, the Board hired Darnisha Evans ("Evans"), then twenty three years old, to fill the AAI position. (*Id.* at ¶ 51.) Evans was one of two applicants, and the only person to complete an interview for the opening. (*Id.*) The parties have not presented the Court with any evidence regarding Evans's qualifications for the AAI position.

### III. Procedural Background

#### A. Mallet's Claim of Age Discrimination

After receiving a Notice of Right to Sue from the EEOC, Mallett submitted a *pro se* complaint identifying two (potential) adverse employment actions – her initial discharge and the Board's failure to rehire her for the AAI position. As Mallett stated in her complaint:

> I was laid off from my position of Statistician Trainee effective July 22, 2003 . . . . On or about June 20, 2003, my immediate supervisor, Lillie Sanders informed me that my position had been 'redefined' by Defendant's budget office and would be changed to a School Clerk position . . . . Ms. Sanders also informed me that my last day as a Statistician would be June 30 and that I would have to then reapply for the position of School Clerk. On or about July 22, 2003, Defendant's staffing office informed me that no new School Clerk position had been created and that I would be laid off effective that date. I was also told that no new positions had been authorized for Ms. Sanders. I believe I was discriminated against because of my age, 60. On or about August 10, 2003, I learned that Ms. Sanders hired a woman who was about 30 years old in the title of Administrative Assistant and had assigned her many of the duties that I had performed.

(R. 1-1; Pl.'s Compl. at 9.)[4]

In their joint status report, the parties identified the "major legal and factual issues" underlying Mallett's discrimination claim. (R. 14-1; Joint Status Rep. at 2.) In doing so, the parties focused exclusively on the Board's failure to rehire Mallett into the new AAI position. (*Id.* at 2-3.) Specifically, the parties identified the following issues:

1. Whether Defendant refused to place Plaintiff into the Administrative Assistant position because of her age;

2. Whether Defendant has legitimate non-discriminatory reasons for selecting a younger employee over Plaintiff;

3. Whether Plaintiff was more qualified than the younger employee;

---

[4] Since the complaint's filing, the Court appointed counsel for Mallett. Mallett, however, has not amended her *pro se* complaint.

4. Whether Defendant's reasons for not selecting Plaintiff were a pretext for discrimination;

5. Whether Plaintiff was entitled to be upgraded to the Administrative Assistant position;

6. Whether Plaintiff applied for the Administrative Assistant position;

7. Whether Plaintiff was performing up to her employer's legitimate business expectations; and

8. Whether the Defendant believed that the person hired as the Administrative Assistant was better qualified than the Plaintiff.

(*Id.*) The parties left aside the issue of whether improper bias motivated the Board to terminate Mallett. (*Id.*)

**B.     Issues Presented on Summary Judgment**

Notwithstanding the content of the joint status report and the Complaint, the Board now moves for summary judgment, contending that Mallett cannot establish a *prima facie* case of discrimination as to the Board's decision *to terminate* her. (R. 22-1; Def.'s Mem. in Supp. of Summ. J. at 1 ("Mallett . . . alleg[es] that she was discriminated against by the Board . . . when it subjected her to a reduction-in-force ('RIF') . . . and terminated her employment . . ."), 5-10 (arguing only that the Board did not *terminate* Mallett with discriminatory intent).) In particular, the Board contends that Mallett fails to make out a *prima facie* case because: (1) she was not meeting the Board's legitimate expectations at the time of her termination; and (2) she cannot demonstrate that other employees outside of the protected class were treated more favorably than she was treated. (*Id.* at 6-7.) In the alternative, the Board argues that Mallett cannot demonstrate that the Board's legitimate, non-discriminatory reason (budget constraints) for terminating her is pretextual. (*Id.* at 9-10.)

As to Mallett's claim that age discrimination motivated the Board's failure to rehire her, the Board's summary judgment brief is silent, save one sentence. Tucked away in its argument that Mallett cannot demonstrate pretext for the "RIF and termination," the Board proffers as an additional non-discriminatory reason that Mallett failed to apply for the AAI position.[5] (*Id.* at 10 (contending generally that even "assuming that Mallett were able to establish a *prima facie* case of age discrimination on the basis of the RIF and termination, she still cannot show that the Board's stated reasons for those employment actions was a pretext for age discrimination").) As discussed below, either the discharge or the failure to rehire, if tainted with improper bias, could give rise to an independent ADEA violation.

## ANALYSIS

### I. ADEA Claims

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). An ADEA violation occurs when a plaintiff presents evidence that demonstrates that age was a "determining factor" in an adverse employment decision. *See Michas*, 209 F.3d at 692

---

[5] In response, Mallett sidesteps the main thrust of the Board's pretext argument by conceding that budget constraints, not discriminatory animus, prompted her discharge. (R. 26-1; Pl.'s Resp. to Def.'s Mem. in Supp. of Summ. J. at 6 ("Mallett is not disputing [the Board's alleged reasons for changing her job title to Administrative Assistant I").) Instead, Mallett, devoting her brief to the failure to rehire claim, takes on only the one sentence in the Board's pretext argument dealing with her failure to apply. (*Id.* at 6.)

The Board's reply, however, ignores Mallett's claim that improper bias spurred the Board's failure to rehire Mallett. The Board chooses instead to stick to the deficiencies in Mallett's (apparently abandoned) discriminatory termination claim. (R. 30-1; Def.'s Reply Mem. in Support of Summ. J. at 3.) The parties' summary judgment briefing, thus, never truly meets head on. The Board apparently concludes that Mallet's discharge (and the Board's underlying motivation for that decision) is the critical event in this case, while Mallett contends that it is the Board's subsequent failure to rehire her.

(citing *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 434 (7th Cir. 1992)). When an employer both discharges an employee and then fails to rehire that employee for another position, the employee has suffered two separate and independent adverse employment actions. *See Ritter v. Hill 'N' Dale Farm, Inc.*, 231 F.3d 1039, 1044-45 (7th Cir. 2000) (analyzing separately plaintiff's claim of discriminatory termination and discriminatory failure to rehire); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) ("an employer's decision to terminate a worker is a separate and distinct act from a subsequent decision not to rehire that employee during a recall"); *see also Oxman v. WLS-TV*, 12 F.3d 652, 660-61 (7th Cir. 1982) (a failure to rehire claim is not reasonably related to a previously filed EEOC complaint alleging discriminatory termination). Either of these two adverse actions, if motivated by improper bias, would violate the ADEA.

    A.     **The Direct Method of Proving Age Discrimination**

A plaintiff may establish an ADEA discrimination claim in two ways. She can pursue either a "direct" or "indirect" method of proving that age was a determining factor in the adverse employment action. *Michas*, 209 F.3d at 692 (citing *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) and *Bellaver*, 200 F.3d at 492). Under the direct method, a plaintiff can use either direct or circumstantial evidence to show that impermissible bias motivated the employer's actions. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). "Direct evidence is evidence that, without relying on inference or presumption, proves that the employer discriminated against the plaintiff . . ." *Chen v. Northwestern Univ.*, No. 03 C 3928, 2005 WL 388570, *10 -11 (N.D. Ill. Feb. 17, 2005) (citing *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). Put another way, direct evidence is essentially "an admission by the

decision-maker that his actions were based upon the prohibited animus." *Rogers*, 320 F.3d at 753 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000)). "Needless to say, such admissions are rarely encountered." *Id.* (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001)).

The second type of evidence permitted under the direct method is circumstantial evidence. Plaintiff, that is, "may [ ] prevail . . . by weaving a net of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Chen*, 2005 WL 388570 at *10 (quoting *Rogers*, 320 F.3d at 753). "Such a net of circumstantial evidence, however, must point 'directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)). Here, Mallett does not present any direct or circumstantial evidence that her age was a determining factor in the Board's decision making. (R. 23-1; Def.'s SMF at ¶ 21, 23.)

### B. The Indirect Method of Proving Age Discrimination

Instead, Mallett chooses to proceed under the indirect method. As a result, Mallett must establish a *prima facie* case of discrimination that, once established, shifts the burden of producing evidence of a legitimate non-discriminatory motive to the defendant. *See Michas*, 209 F.3d at 692-93 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); *see also Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999) (applying the *McDonnell Douglas* burden-shifting analysis to ADEA claims). If the defendant provides a legitimate motive for termination, the "presumption of discrimination established by the *prima facie* case then dissolves, at which point the plaintiff has an opportunity to prove that the proffered nondiscriminatory reason was pretextual." *Bellaver*, 200 F.3d at 493;

*see Michas*, 209 F.3d at 693 ("If the defendant provides a legitimate motive for termination, the burden shifts again to the plaintiff to provide evidence that this motive was pretextual."). At all times, "the burden remains on Mallett to demonstrate that the employer would not have taken the alleged adverse employment action against the plaintiff but for plaintiff's membership in a protected class." *Chen*, 2005 WL 2005 WL 388570 at *10 (citing *Cerutti*, 349 F.3d at 1061 n.4); *Bellaver*, 200 F.3d at 493 (the "ultimate burden of persuading the trier of fact that discriminatory animus caused her dismissal rests at all times with the plaintiff"). But Mallett's "evidence on the *prima facie* case need not be overwhelming or even destined to prevail; rather, [she] need present only 'some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion.'" *Bellaver*, 200 F.3d at 493 (quoting *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir.1997)).

## II.     Mallett's Discriminatory Discharge Claim

### A.     The *Prima Facie* Case

"[R]ecognizing the variety of adverse employment actions covered within the broad reach of the discrimination statutes, [the Seventh Circuit has] adapted the requirements for making a *prima facie* case in special cases to reflect the reality of the workplace." *Michas*, 209 F.3d at 693. Generally, a plaintiff must prove that she "(1) was a member of a protected class (age 40 and over); (2) was doing well enough to meet [her] employer's legitimate expectations; and (3) was discharged . . ." *Miller v. Borden, Inc.*, 168 F.3d 308, 313 (7th Cir. 1998). In addition, a "crucial fourth element must also be established" the formulation of which varies "depending on the type of age discrimination alleged." *Id.* (citation omitted). For instance, "[i]n situations involving the simple termination of a single employee, normally the employee must

establish that the employer *sought a younger replacement* for [her]." *Id.* (citing *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331-32 (7th Cir. 1996)) (emphasis original).

In contrast, when an employer undertakes a "reduction in force" ("RIF") by permanently eliminating certain positions from its workforce "it makes little sense to require a plaintiff to . . . demonstrate that the position . . . was filled by someone who is not a member of the protected class." *Michas*, 209 F.3d at 693. Accordingly, in such a situation, the Seventh Circuit requires only that "a plaintiff [ ] demonstrate that other similarly situated employees who were not members of the protected class were treated more favorably." *Id.*

"Because of the fear that employers might misuse the RIF description to recharacterize ordinary terminations as reductions in force when they terminate an individual with a unique job, [the Seventh Circuit] ha[s] [in certain circumstances] dispensed with the requirement that the plaintiff show 'similarly situated' employees who were treated more favorably." *Michas*, 209 F.3d at 693 (citing *Bellaver*, 200 F.3d at 495); *Schmidt v. Lavin and Sons, Inc.*, No. 00 C 804, 2001 WL 290362, *4 (N.D. Ill. Mar. 22, 2001) ("The law does not allow employers to avoid liability by terming a decision to fire a single employee a 'RIF.'") (citation omitted). For example, when an employee's duties are not eliminated but rather "absorbed by other employees" a plaintiff can establish the fourth prong of the *prima facie* case by "showing simply that . . . [her] responsibilities were absorbed by employees not in the protected class." *Ritter*, 231 F.3d at 1043; *see also Michas*, 209 F.3d at 693 ("because the fired employee's duties are absorbed by other workers and the employee was 'replaced,' not 'eliminated,'" the Seventh Circuit "only require[s] that . . . [plaintiff's] duties were absorbed by employees who were not members of the protected class."). The Seventh Circuit has labeled this type of situation a

13

"mini-RIF." *See Ritter*, 231 F.3d at 1043.

"The facts in a 'single-discharge' case or a 'mini-RIF,' unlike a true RIF, reveal that only a single employee was fired and that the single employee's job was not eliminated, instead the fired employee's duties were absorbed by other younger employees. The net result being that the fired employee was effectively 'replaced' by younger employees." *Schmidt*, 2001 WL 290362 at *4.

### 1. Contrary to the Parties' Suggestion, the RIF Test Does Not Apply Here

The Board presumes that the RIF test controls Mallett's *prima facie* burden here. (R. 22-1; Def.'s Mem. in Supp. of Summ. J. at 4.) Mallett seems to agree. (R. 26-1; Pl.'s Resp. to Def.'s Mem. in Supp. of Summ. J. at 5.) But as the above survey of Seventh Circuit precedent reveals, the RIF formulation applies only when an employee's duties are eliminated.

That is not the case here. Despite eliminating her *job title*, the Board did not eliminate Mallett's *job duties*. To the contrary, the Board reallocated all of Mallett's job duties to the AAI position. Thus, Mallet's claim is most akin to a "single-discharge" case, and the appropriate inquiry is whether the Board sought to replace her with a younger employee. *See Miller*, 168 F.3d at 313 (citing *Gadsby*, 71 F.3d at 1331-32). Here, Mallett easily establishes the fourth prong of her *prima facie* case because the Board in fact hired Evans, then twenty-three year old, to take over Mallett's job duties.

### 2. A Material Issue of Fact Exists as to Whether Mallett Met Her Employer's Legitimate Expectations

The Board also fails to establish an absence of material fact as to whether Mallett met the Board's legitimate expectations, the second prong of the *McDonnell Douglas* test. As factual support for its argument, the Board refers only to deposition testimony showing that Mallett did

not fulfill all of the responsibilities listed in her official job description. (R. 22-1; Def.'s Mem. in Supp. of Summ. J. at 5.) In filling out the request to open the AAI position, however, Nickolich stated that Mallett's "old position *does not reflect actual duties/responsibilites*." (R. 29-1; Pl.'s SAMF at 29 (emphasis added).) Moreover, the Board apparently concedes that it never asked Mallett to fulfill all of the duties in her job description. (*See also id.* at 25 (Sanders confirming that Mallett did whatever necessary to help the office run smoothly).) Thus, a material issue of fact exists as to what expectations the Board had and also as to whether Mallett met those expectations.

   **B.  Pretext**

  "If the employer demonstrates a legitimate, nondiscriminatory reason, the plaintiff [ ] must show that the employer's reason is a pretext for discrimination by a preponderance of the evidence." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 -984 (7th Cir. 1999). "Pretext in this context means 'a lie, specifically a phony reason for some action.'" *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1013 (7th Cir. 2000) (same); *Michas*, 209 F.3d at 695 (to show pretext plaintiff must present evidence form which the Court may infer that the employer "did not, at the time of [her] discharge, honestly believe the reason they gave for firing her") (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992)).

  "Pretext may be established directly with evidence that the employer was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Id.* (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)); *see also Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156-57 (7th Cir.

1994). "Indirect evidence of pretext showing that an employer's proffered reasons are not credible may be made by demonstrating that the reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge." *Id.*; *see also Michas*, 209 F.3d at 695 ("In the absence of any direct evidence [the Court] will not second-guess the business decisions made by an employer.").

Here, the Board contends that Mallett's claim fails because she cannot show that something other than budget constraints motivated its decision to discharge her. (R. 22-1; Def.'s Mem. in Supp. of Mot. for Summ. J. at 8.) As noted above, instead of responding to the Board's argument on this front, Mallett focuses her counterattack on the fact that the Board failed to hire Mallett for the AAI position. (R. 26-1; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 7.) Indeed, Mallett not only fails to come forth with any evidence showing pretext, but has conceded that the Board's proffered reason is not pretextual. (R. 26-1; Pl.'s Resp. to Def.'s Mem. in Supp. of Summ. J. at 6.) Accordingly, the Board is entitled to judgment as a matter of law and its summary judgment motion is granted to the extent it seeks dismissal of Mallet's discharge claim.

### III. Mallet's Failure to Rehire Claim

To the extent it seeks dismissal of Mallett's failure to rehire claim, however, the Board has not carried its summary judgment burden. As noted above, the Complaint alleges, and the parties' joint status report confirms, that the crux of Mallett's claim is that the Board discriminated against her by failing to rehire her for the AAI position. The Board's summary judgment brief, however, does not address this claim. In fact, the Board does not even present or consider the standard governing a plaintiff's *prima facie* case in the failure to rehire context. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003) (applying the

*McDonnell Douglas* burden shifting analysis in the failure to rehire context); *Ritter,* 231 F.3d at 1045 (same).

In addition, the Board's pretext argument focuses only on the reasons underlying the Board's "RIF" and Mallett's "termination." (R. 22-1; Def.'s Mem. in Supp. of Summ. J. at 1, 5-10.) Amid this argument, the Board mentions (in one sentence) that Mallett failed to apply for the AAI position; but, as the context makes clear, the Board raises this point only as an additional, non-discriminatory reason justifying Mallet's discharge.[6] (*Id.* at 9-10.) By offering no argument as to Mallett's failure to rehire claim, the Board has failed to establish that it is entitled to judgment as a matter of law.[7]

## CONCLUSION

For these reasons, the Court grants the Board's motion for summary judgment to the extent it relates to Mallet's claim that discriminatory animus motivated the Board's decision to discharge her. Because the Board has not met its summary judgment burden otherwise, its

---

[6] In its reply, the Board argues that Mallett's admitted failure to apply also prevents her from establishing the fourth prong of the *McDonnell Douglas* burden-shifting analysis. The Board's " failure to address or develop [this] claim in its opening brief constitutes a waiver of that claim." *See 330 West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000); *see also Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir. 1992) (district court may not grant summary judgment on ground first raised in reply). Accordingly, the Court will not address the merits of the Board's contention.

[7] Even assuming *arguendo* that this one sentence argument could be read as applying to Mallett's failure to rehire claim, summary judgment nonetheless would not be proper because such a "perfunctory and undeveloped" argument constitutes waiver. *See Oestringer v. Dillard Store Servs., Inc.*, 92 Fed. Appx. 339, 342 (7th Cir. 2004) ("Perfunctory and undeveloped arguments are waived, especially when a litigant . . . is represented by counsel"); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (same); *Volvosek v. Wisconsin Dep't of Agr. Trade & Consumer Prot.*, 344 F.3d 680, 689 n.6 (7th Cir. 2003) (complete absence of legal argument waives consideration of claim).

motion for summary judgment is denied to the extent it sought to dismiss Mallet's failure to rehire claim.

Dated: July 5, 2005 ENTERED

_____
AMY J. ST. EVE
United States District Judge